UNITED STATES DISTRICT COURT, MIDDLE
DISTRICT OF FLORIDA, JACKSONVILLE
DIVISION

PAUL EMMANUEL KNIGHT,
PETITIONER,

VS.                                    CASE NO: 3:19-CV-779-BJD-JBT

KEEGAN M. GRAY, ET AL.
RESPONDANTS

MOTION'S FOR SUMMARY
JUDGMENT,

COMES NOW, THE PETITIONER, PAUL EMMANUEL KNIGHT, PRO SE, AND, PURSUANT TO RULE'S, 56 (C)(2), FED.R.CIV. P., UPON, NO GENUINE ISSUE OF MATERIAL FACT IN DISPUTES SUPPORTED BY EVIDENTIARY DOCUMENTARY EVIDENCE CITED WITHIN THE ATTACHED AFFIDAVIT, UPON, ADMISSION'S OF, THE EXISTENCE OF AN AUTHORIZED, ORGANIZED CHEMICAL AND PHYSICAL USE OF FORCE AGAINST THE PETITIONER, ON, MAY 1st, 2019, SEE, EVIDENTIARY DOCUMENTS, ① D.R. LOG # 205-190915; ② D.R. LOG # 205-190916, ③ D.R. LOG # 205-190917, ④ D.R. LOG # 205-190919 ⑤ D.R. LOG # 205-190920, (NOTE, THIS D.R. REPORT WAS OVERTURNED ON, 7-31-19.) ⑥ D.R. LOG # 205-190921, (NOTE, THIS REPORT WAS OVERTURNED, ON, 7-31-19.) ⑦ D.R. LOG # 205-190922. ⑧ D.R. LOG # 205-190924 ⑨ D.R. LOG # 205-190925, NOTE: I NEVER RECEIVED A COPY OF THIS D.R. REPORT, NOR A RESPONSE FROM THE INST. AL. LEVEL, UNDER GRIEVANCE RULE 33-103.011 (3)(b) & (4), F.A.C. I FILED TO THE CENTRAL OFFICE

level of the Inst. Non response, which, Central returned the grievance without action, on, 6-17-2019, waving the right of a defense to challenge the merit of the exhaustion, see attached grievance dated, 6-10-19 & response, dated 6-17-19, upon log#19-6-22635, see, cover page of, petition for writ of mandamus, filed, 6-28-19. See, cont. of subsec III statement of claim document, citing all disciplinary reports. This one subsec. (10), see, Ross v. County of Bernalillo, 365 F. 3d. 1181, 1186-87, (10th Cir. 2004) (when there is no possibility of any further relief, the prisoner's duty to exhaust available admin. remedies is complete.) Maraglia v. Maloney, 499 F. Supp. 2d. 93, 97 (D. Mass. 2007) (holding that, prisoner was not required to file a grievance about the failure to respond to a grievance, absent a regulation to that effect.) Lewis v. Washington, 300 F. 3d. 829, 833 (7th Cir. 2003) (Non-response made remedy unavailable.) Which report was a validation of the physical and chemical 8th Amend. assault, causing injuries that still requires medical treatment, see, Luong v. Hatt, 979 F. supp. 481, 485-86 (N.D. Tex. 1997) (A physical injury is an observable or diagnosable medical condition requiring treatment by a medical care professional; holding abrasion of arm and chest, contusion, and swelling of jaw did not meet that standard) But in this case, I'm still suffering pain needlessly when medical care is readily available by the dept. of Corr.'s for nerve damage from the unprovoked beating, upon my right hand, fingers, arm and shoulder, with a throbbing numbness that awakens me from sleep in throbbing pain. See, affidavit, upon sick call requests and grievances being ignored, upon ample evidence of agonizing pain, see, Smith v. Jenkins, 919 F. 2d. 90, 93-94 (8th Cir. 1990) (mere proof of diagnosis by a doctor did not require dismissal of case, district court directed to review prisoner's medical records.)

2

SEE, 18, U.S.C. 242, Fed. Stat. THE MEANING OF PHYSICAL INJURY, IS A CRIME FOR SOMEONE ACTING UNDER COLOR OF STATE LAW, TO DEPRIVE ANOTHER PERSON OF FED. CIVIL RIGHTS by a showing of bodily injury, NO MATTER HOW TEMPORARY, "PROVIDING", IF bodily injury RESULTS FROM THE ACT COMMITTED IN VIOLATION OF THIS SECTION, THE DEFENDANT SHALL BE FINED UNDER THIS TITLE, OR IMPRISONED NO MORE THAN TEN YEARS OR BOTH. body injury is NOT DEFINED by the STAT. HOWEVER, SEVERAL OTHER FED. STAT.'S DEFINE THE TERM AS MEANING, (A,) a cut, ABRASION, BRUISE, BURN OR DISFIGUREMENT, (B,) PHYSICAL PAIN. (C.) ILLNESS, (d), IMPAIRMENT OF A FUNCTION OF A body member, ORGAN OR, MENTAL FACULTY OR ANY OTHER INJURY TO THE body (10.) D.R. Log # 205-191038; THE BEATING CONTINUED, THIS WAS THE SEXUAL ABUSE IN B WING OF FLA. STATE PRISON SHOWER, WHEN I RECEIVED THIS DOCUMENT, OUT OF FEAR OF IT BEING CONFISCATED, I SENT IT TO THIS COURT IN MY CIVIL RIGHTS COMPLAINT BECAUSE, IT WAS THE ONLY SUBSTANTIATED FACT OF EVIDENCE OF THE ASSAULTS IN THAT SHOWER WHERE A USE OF EXCESSIVE FORCE ADMITTED TO.(11.) D.R. Log #, 205-191039, This REPORT, IS IN FACT, D.R. Log # 205-190914, THAT CENTRAL OFFICE CLAIMS, do NOT EXIST, BUT SAID, EXISTENCE IS THE EVIDENCE ALONG WITH, D.R. Log # 205-190918, IS AN MATERIAL FACTUAL ISSUE ON THE RECORD OF MY PERSONAL PROPERTY THAT RESPONDENT'S CAN NOT DISPUTE, WHEN, THERE IS NO ADEQUATE POSTDEPRIVATION REMEDY FOR THE LOSS, SEE, Ross V. BLAKE, 136 S. Ct. 1850, 195, L.Ed. 2d. 117 (2016) (The court distilled three situations in which an admin. Remedy is not "AVAILABLE" UNDER, PLRA, (1), AN Admin. PROCEDURE IS UNAVAILABLE WHEN, (despite what regulations 768.28 FLA. STAT. OR FLA. ADMIN. CODE, 33-602.210(4), OR guidance material may promise), IT OPERATES AS A SIMPLE DEAD END - WITH OFFICERS UNABLE OR

3

consistently unwilling to provide any relief to aggrieved inmate. Id. at 1859, 2nd, "An Admin. scheme might be so opaque that it becomes practically speaking, incapable of use." Id. 3rd, a remedy is not available "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." Id. at 1860, as in my case, see, Affidavit C, which is in nonexistent as the court dismissed this claim on 2-23-20 Pursuant to Rule 3, (7), Pleadings Allowed, 7-4, Motions, Rules 56 (c), (1)(A), Fed. R. Civ. P. The Petitioner, submits this list of undisputed facts upon no issue to be tried, that entitles him to summary judgement.

On May, 1st, 2019, the Petitioner was in a confrontation with the legal mail officer, picking up legal mail; upon, calling Sgt. Nazario of the housing wing about the issue, he said, he was going to write me a D.R. for yelling on his door. This report is D.R. Log # 205-190814, that central office says, do not exist, though, it cites the fact of my personal property. After, speaking with, Sgt. Nazario; Lt. Sanders, came to my cell, telling me to submit to handcuffs, that, I was going on Property Restriction. At this time, I had a number of cases in courts, and, that same day, just sent, in a Habeas Corpus on the Warden of U.S.P. Security Slater, was reading my legal documents and wanted to confiscate my property. This is where, the unlawful use of force came into play. First, Sgt. Nazario, wrote D.R. Log # 205-190815, citing that he ordered me to stand up and cease my disorderly conduct, to which I refused: Organized chemical and physical

4

force was utilized to "quell" inmate Knight's disturbance. See, Affidavit, Exhibit (B)(1)-(9), note, that Exhibit (B)(4), cites, no: use of force number or any other document of an incident report of this un--provoked beatings.) which, their is no factual dispute, respondants can produce for a trial. See, Plaisance v. Phelps, 845 F.2d 107, 108 (5th Cir. 1988) (the purpose of trials is only to decide factual issues.)

Officer, Joel E Cordova, wrote, D.R. Log #, 205-190916, Battery/Att./Co, and, Brett Gillespie, wrote, D.R. Log# 205-190917 - Battery/Att./Co; Through, their own admissions, used excessive force against me with chemical agents, by maliciously spraying me with three (3) canisters of chemical agents, causing intense pain of a burning sensation over my body, causing mucus to run out my nose, an and a involuntary burning and closing of the eyes, a gagging reflex for breath, and temporary paralysis of the larynx, effectively incapacitating me. See, Affidavit, exhibit (C)(1)-(5), and (D)(1)-(4).

Sgt. Austin Merritt, Officer, Jack Vanallen, Matthew Kurth and, Sgt. Keeshan M. Gray; wrote (1) Merritt, D.R. Log# 205-190919, Battery, Att./Co. (2) Vanallen, D.R. Log# 205-190920; Battery/Att./Co; (3) Kurth, D.R.Log# 205-190921, Battery/Att./Co, (4) Gray, D.R. Log# 205-190922; Battery/Att./Co; cited that at 2:23 pm on 5-1-19, dressed in riot gear, assembled in front of my cell, E-wing cell 1222 of F.S.P. and, at the directions of L.T. Sanders, entered my cell behind a cell extraction shield, knocking me to the floor, restrained me behind my back and legs shackled, without provocations, once I was shackled on the floor and offered no physical resistance, Gray, Merritt, Kurth and, Vanallen, started repeatedly to beat me with naked fists barbarically, all over

5

my body, head, the sides of my face, trying to break my hands' fingers, yelling; stop resisting inmate!, stop resisting!! I've got an arm!, I got a leg! stop resisting inmate! stop resisting!!! L.T. Sanders, Sgt. Gillespie and Officer Econom, stood by and expressly condoned their actions, without even trying to intervene to stop the unprovoked beatings see, Skrtich v. Thornton et al, 280 F.3d 1295; 2002 U.S. App. Lexis 1210; 15 Fla. L. Weekly Fed. C. 265; Hudson v. McMillin, 503 U.S. 1, 7, 112 S.Ct. 995, 999, 117 L.Ed. 2d 156 (1992)("the core judicial inquiry is... whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm"), we may not superimpose onto this inquiry an arbitrary injury threshold. see, Wilkins v. Gaddy 559 U.S. 34, 39, 130 S.Ct. 1175, 1179, 175 L.Ed. 2d 995 (2010) (to conclude... that the absence of some arbitrary quantity of injury requires automatic dismissal of an excessive force claim improperly bypasses this core inquiry.) see, Affidavit Exhib.\ys (F)(4)-(10);(F)-(1)-(3);(G)(4)-(3); & (H)(1)-(8); note, that Exhib. Y.(H)(4), cites, NO, Use of Force number or any other documental information of an incident report of this unprovoked beating, that requires a trial of factual issues of dispute.)

I was beaten so severely, that, I could not see once they pulled me from the floor. The beatings resulted in undisputably injuries, to the point of, through, indirect participation went to infringing on Petitioners constitutional

6

rights in falsifying documents, even upon medical and central office personnel; Lt. Sanders, D.R. Log # 205-190918, disobeying order. Exhibit (I)(1)-(9), and D.R. Log # 205-190924 Exhibit (J)(1)-(2); Note, that (J)(8) & (10); cites No, use of force number, or any other documented information upon an incident report, each of these defendant's cites that, I committed battery against them, from the evidence before this court. But, at no time, was an incident report written or a use of force documented by these defendants. From the medical report, emergency room record, DC4-701C form, post-use-of-force-exam, is noted under Exhibit (A).(3) injuries is noted on, (A)(2) Exhibit. Exhibit (B)(1), shows, other injuries, nothing cited on the use of force, other injuries shows no treatment, on (B)(1) & (B)(2) description of other injuries. (C)(1) cites X-rays ordered & cite injuries (D)(1), cite, X-rays & injuries; of still being in pain, from nerve damage, that is being ignored by this institution and central office, in allowing security staff to force handcuffs on me behind my back knowing it could cause further injury, causing more pain from the injured nerves and deliberately not sending me to a nerve specialist, feeding me 600 mg's of Ibuprofen, acknowledging the illness but not adequately treating me. Sgt. Gillespie, D.R. Log # 205-190925, Battery/Att./COI, cited That, at 2:27 pm, 5-1-19, that I struck him in the upper torso area with what appeared to be feces, on 5-14-19, I was found guilty, lost 200 days gain time and 60 days confinement. I never received a copy of this D.R. and the Inst. refused to respond to the D.R. appeal, as evidence, I submit appeal to

7

the Secretary of the D.O.C. on 6-18-19 and response exhibit (M)(2), returned without action, waiving the defense to challenge the merit of exhaustion. See, Lewis v. Washington, 300 F.3d. 829, 833 (7th Cir. 2003)(non-response made remedy unavailable.) See cover page, of mandamus of this case number, Ex.(M)(1) of (5), list of all reports, citing subsec.(10) on this case #, as noted on page (1): omit cover page, insert D.R. copy of findings. Exhibit,(O)(1)-(7), is Sgt. Nazario, D.R. Log # 205-191039 counter-part of, D.R. # 205-190914, that do not exist, cited on page(3).

Each of these reports, is in non-compliance with, procedure # 602.008/ procedure title; incident reports — institutions/ responsible authority; office of institutions/ effective date; August 23, 2018./ initial issue date; October 5, 1999; supersedes; security operations manual, ch. II. Relevant DC forms; DC6-112C and DC6-210./ ACA/CAC standards; 4-4183 and 4-ACRS-2A-09; state/federal statutes; sections, 20.315/944.09 and 944.14 F.S. Fla. Admin. Code; Rules, 33-208.002, 33-602.2035 and 33-602.210 F.A.C.

Purpose; to ensure the formal conveyance of information within the department of corrections that is vital to the safety and the operation of a facility.

Definitions; (1) incident, where used herein, refers to any unusual occurrence or information received about which formal documentation and notification is indicated. This may include an accident involving possible injury to a person or damage to equipment, a suspicious action or occurrence, or other circumstance which could impact agency operations. The incident may be related to an inmate, an employee, or a member of the general public.

8

SPECIFIC PROCEDURES:

(1), WHEN AN EVENT OCCURS THAT IS FULLY DOCUMENTED IN ANOTHER FORM OR INFORMATION IS RECEIVED WHICH REQUIRES WRITTEN NOTIFICATION OR DOCUMENTATION, AN "INCIDENT REPORT", DC6-210, WILL BE INITIATED BY THE EMPLOYEE:

(A), INVOLVED IN THE EVENT;

(b), WHO WITNESSED THE EVENT; OR

(C), WHO RECEIVED THE INFORMATION.

(NOTE, EACH ONE OF THESE DEFENDANTS, Sgt. NAZARIO, RAMON AND THE UNKNOWN, JOHN DOE, OFFICER, WHO HELPED OFFICER JOEL ECONOM, PACKED/DESTROYED THE PROPERTY, WAS REQUIRED TO FILE AN INCIDENT REPORT OF THE USE OF FORCE/EXCESSIVE FORCE/UNPROVOKED BEATINGS/STATE LAW ASSAULT AND BATTERY AND FAILED TO DO SO.

(2), A, DC6-210, WILL ALWAYS BE FILLED OUT:

(A), by MEDICAL STAFF WHEN RESTRAINTS ARE APPLIED WITHOUT USE OF FORCE, i.e., THE APPLICATION OF PSYCHIATRIC RESTRAINTS WITHOUT RESISTANCE OF THE INMATE AS OUTLINED IN WRITTEN RULE, 33-602.210. IV.A-C.

(b), by AN EMPLOYEE WHO WITNESSES AN INCIDENT AS OUTLINED IN "DRUG TESTING OF INMATES," PROCEDURE 602.010, THAT RESULTS IN A REASONABLE SUSPICION DRUG TEST; AND,

(C), REGARDING ANY INCIDENT OR ALLEGATION OF AN INCIDENT INVOLVING SEXUAL BATTERY OR SEXUAL HARASSMENT OF AN INMATE OUTLINED IN "PRISON RAPE: PREVENTION, DETECTION, AND RESPONSE" PROCEDURE 602.053.

(NOTE, NOT ONE REPORT FILED OF THE SEXUAL INCIDENT IN B-WING SHOWER OR THE CONTINUED BEATINGS AND ABUSE, by ANY OF THE OFFICERS, MEDICAL STAFF OR PROCEDURAL REQUIREMENTS. IN FACT, THE ONLY WRITTEN INFORMATION OF THAT ABUSE, IS Sgt. GILLESPIE'S ADMISSIONS IN DR. Log # 205-191038, OF BEING PRESENT TO ASSIST WITH A FORCED DECONTAMINATION SHOWER

9

See, Exhibit, (J)(1), within the affidavit, and Exhibit, (K),(A)(1), Emergency Room Records on post-use of force on DC4-701C form, no information on the sexual assault; and, (K)(B)(1), Emergency Room Records, cited, allegations of, "alleged staff abuse": numerous lacerations to face, eyes, head, nose, hand, fingers of right hand, arm, broken little toe, bruises and abrasions, nothing more on the staff sexual abuse on B-wing shower incident, defendant, Espino, M.D. cited. No treatment provided on, May 3rd, 2019, Friday, two (2) days after the incidents I declared a mental health emergency, mental health director, Mr. Donschan, came to see me on B-wing, I reported to him that I was sexually assaulted on the second floor shower by security staff on, May 1st, 2019 and that I was in fear of them doing something to me, he told me that they, defendants was not going to do anything to me, and not to worry. I told him that they have done it and is threatening that it was not over. He did not believe me and I'm not sure of him writing an incident report. Though, my mental health counselor, K. Hatchison, saw me on May, 6, 2019, coming from medical, where Capt. Vox, like May 1st incident, told me that she did file a mental health report on witnessing my injuries of the physical assault. These are the only written documentations of these incidents that I'm aware of.)

(3) The DC6-210, will include:
(A), the dates
(b), time of the event, and,
(C), a concise description of the event or the inmate's

10

behavior.

(4). Each incident should be considered with regard to it's possible impact on public safety, the operation of the institution, or liability of the agency."

(5). Reporting of Incident:

A statement of the circumstances and details of the incident will be completed by each employee, who has witnessed or received information pertaining to an unusual or suspicious event involving an inmate, employee, or member of the general public. This will be completed as soon as possible, but not later than the end of the shift. The employee will legibly sign the DC6-210, using her/his name. An employee who is unsure whether the incident warrants an incident report should notify her/his immediate supervisor. The shift supervisor will be notified of the incident — (Capt. Hall). Prior to the DC6-210's being written. The shift supervisor will determine which employees will prepare DC6-210's if numerous employees witness the same incident. Staff who witness abuse of an inmate may file a DC6-210 without prior notification to the shift supervisor.

(6). Staff/Inmate's Statements:

It may be determined that a supporting statement should be obtained from an individual who was not present at the time of the incident, but who has knowledge of the subject.

(A). Any supporting statements from staff members who have knowledge of the incident should be recorded on additional DC6-210's. This information will be submitted to the shift supervisor or department supervisor requesting the statement.

(b). A "witness statement," DC6-112C, will be to document statements made by inmates whose statements are determined to be relevant by the shift supervisor or appropriate department supervisor. This information will be attached to the initial DC6-210's.

11

(7), DOCUMENTATION OF MEDICAL TREATMENT: DOCUMENTATION OF MEDICAL TREATMENT RECEIVED BY ANYONE AS A RESULT OF AN INCIDENT WILL BE LIMITED TO WHEN, WHERE, AND, WHO ADMINISTERED MEDICAL TREATMENT. ALL REMAINING MEDICAL INFORMATION WILL BE RECORDED AND MAINTAINED BY MEDICAL STAFF AS MAY BE APPROPRIATE.

(8), EMPLOYEE ARREST: IN ACCORDANCE WITH RULES 33-208.002 (2) (A), F.A.C. EACH EMPLOYEE WILL MAKE A FULL WRITTEN REPORT ON A DC6-210 OF ANY OF THE FOLLOWING WITHIN 24 HOURS OR UPON REPORTING TO WORK FOR THE NEXT ASSIGNED SHIFT, WHICHEVER IS SOONER:

(A), A CRIMINAL CHARGE FILED AGAINST HER/HIM;

(b), AN ARREST OR RECEIPT OF A "NOTICE TO APPEAR" FOR VIOLATION OF ANY CRIMINAL LAW INVOLVING A MISDEMEANOR, FELONY, OR ORDINANCE, EXCEPT MINOR VIOLATIONS FOR WHICH THE FINE OR BOND FORFEITURE IS $200 OR LESS;

(c), ANY "STATUS CHANGE" IN THE CASE DESCRIBED IN (A) OR (b) ABOVE, TO INCLUDE ANY PLEADINGS FILED, APPEARANCE MADE, DATES SET, SANCTIONS ORDERED, AND DECISIONS RENDERED; OR

(d), KNOWLEDGE OF ANY VIOLATION OF THE LAW, RULES, DIRECTIVES, OR PROCEDURES OF THE DEPARTMENT.

(9), DISPOSITION:
(A), REVIEW BY SHIFT SUPERVISOR/APPROPRIATE DEPARTMENT HEAD:
(1), A BRIEF REPORT AND/OR DISPOSITIONS WILL BE COMPLETED BY THE SHIFT SUPERVISOR:

(A), ON ANY INCIDENT REPORT INVOLVING AN INMATE, OR

(b), ANY OTHER INCIDENT REGARDING INSTITUTIONAL SECURITY BEFORE THE END OF HER/HIS SHIFT.

(2), THE APPROPRIATE DEPARTMENT HEAD WILL COMPLETE THE INITIAL REPORT DISPOSITION ON ANY INCIDENT THAT RELATES TO A NON-SECURITY MATTER.

(b), REVIEW BY CHIEF OF SECURITY: THE CHIEF OF SECURITY WILL REVIEW THE INFORMATION PRESENTED TO HER/HIM AND RECORD HER/HIS COMMENTS ON THE DC6-210. THE DC6-210 WILL BE

immediately forwarded to the wardens, the Chief of Security will be responsible for ensuring that a log number is assigned to each DC6-210 and a file copy of ALL DC6-210s is maintained. At the end of each fiscal year, DC6-210s will be purged and filed according to records retention procedures.

(C). Reviews by Wardens: The warden will review the DC6-210 in order to take appropriate action. This action may include, but is not limited to:

1.) Forwarding information from the report to the Inspector General's office pursuant to reporting incidents to the Inspector General and Management Information Notification System; Procedure 108.007;

2.) directing information be transmitted to the appropriate Regional Office's Staff; or

3.) directing institutional staff to correct deficiencies and/or take appropriate action.

(10). Special Report of Warden: The warden may prepare a supplemental report, memorandum, or letter outlining the circumstances of the incident, action taken, the results of action taken, and/or recommendations for future action. The warden may disseminate this report to staff or forward it for review by the Regional Director.

(11). Completion and Distribution of Report: All DC6-210's will be completed and forwarded to the warden within 72 hours from the time of the incident. The report will be distributed as follows:

(A). Original — Warden,
(b). Copy — Chief of Security or department head (as applicable),
(c). Copy — Institutional Inmate File, (if applicable)
(d). Copy — Local Human Resources Representative, if applicable), and
(e). Copy — Office of the Inspector General, (at the discretion —

13

— of the wardens).

(12). The warden will designate staff members who will be responsible for maintaining a copy of all DC6-210's in a secured area. On May 1st, 2019, security staff members cited herein, unlawfully and violently, uncontrollably beat me with naked fists, hand and legs shackled while behind my back and without provocation, while two supervisors, Lt. Sanders & Sgt. Gillespie, along with officer Economou, stood by and watched the beating, expressly condoning the actions of others beating me, to the point where as the beating continued on B-Wing, Sgt. Gillespie, actively participated in the assault, in B-wing shower, homosexually abusing/tampering with my buttocks and anus with an instrument, (shower hoes muzzle) The evidentiary documents attached, supports the contentions of no genuine issue of the assault/excessive use of force by numerous officers own admissions under written statements that are considered evidence, as courts are required to defer to the professional judgment of prison officials, see, Beard, 548 U.S. at, 528-30, to contend, that there exists no genuine issue to be tried here, and challenge defendants to produce those issues of disputed facts to prevent the court from granting summary judgment as a matter of law for being brutally beaten, handcuffed and shackled behind my back, causing serious injuries, whereas, requiring medical attention for blood pouring out my head, eyes and mouth, on my face and other lacerations and damage to my hands, fingers & shoulder, broken/snapped little toe on my left foot/ bone protrusion of deformity and nerves damage that, I'm being denied medical treatment by defendant, Espino, M.D. that the 8th Amendment requires provided for medical needs. See, Fields

14

v. Corizon Health, Inc., 490 F. App'x 174, 183-85 (11th Cir. 2012) (holding that prisoner had a serious medical need that prison health's policy did not recognize as sufficient to warrant hospital care and, as a result, prisoner suffered paralysis that could have been averted.) Which is what is happening now over a year after the beatings, where the D.O.C. has a policy of not recognizing or treating the nerve damage that can worsen the condition to cause paralysis to the sensory function of my nerves, by allowing security staff to force handcuff use behind my back, knowing it could cause further injury, upon a subdued inmate, (handcuffed and legs shackled), that still has petitioner in chronic pain, that prison officials still refuses to treat. See, Alexander v. Perrill, 916, F. 2d. 1392, 1395 (9th Cir. 1990) (prison officials "can't just sit on your duff and not do anything" to prevent violations of rights). Since the 5-1-2019 incidents, every institution the petitioner has been transferred to within the Fla. prison system, medical staff and central office in Tallahassee through, medical grievances upon the pain, has denied medical treatment for nerve damage by a specialist, to prevent further injury and stop security staff from forcing petitioner's arms together behind his back to force handcuffs on him, causing more excruciating physical pain.

# MEMORANDUM OF LAW

This memorandum of law is based upon this motion in opposition. "An official is not entitled to qualified immunity, if his or her conduct violates 'clearly established statutory or constitutional rights,' or which a reasonable person would have known." See, Harlow v. Fitzgerald, 457 U.S. 800-818, 73 L.Ed.2d, 396, 102 S.Ct. 2727 (1982). Or violates a regulations that bear upon the claim of constitutional rights. See, Spruytte v. Walters, 753 F.2d. W.Y. 511. The defendants, clearly are not entitled to immunity on the facts of this case, because, while was the controlling law at the time of the disciplinary hearings which fell woefully short of the notice requirements and denial of qualified immunity, Hudson, and Whitley, "A defense of qualified immunity is not available in cases alleging excessive force in violation of the 8th/eighth amendment, because, the use of force, unmaliciously and, sadistically to cause harm," is clearly established to be a violation of the constitution by the supreme court decisions cited above. See, Skrtich v. Thornton, 280 F.3d. 1295, 1301 (11th Cir. 2002) the court can not fail to apply the appropriate standard under Fed. R. Civ. P. 56. The petitioner asserts that, he was assaulted while, handcuffed behind his back, legs shackled and other officers stood there and watched, failing to take steps to stop both assaults, one in G and B-wing shower, on 5-1-2019. "A prisoner may be [2019 U.S. App. Lexis 13] punished for battery on a prison guard, and that prison guard may be held liable for using excessive force on the prisoner in subduing him. Both may be true. See, Dixon v. Hodges, 887 F.3d. 1235, 1238 (11th Cir. 2018). Petitioner, ask the court to expressly determine that there is no just reason for delay and to direct entry of final judgment under Rule 54(b) Fed. R. Civ. P. L.F. 55.1.5 and C.O.I.n.s. officers, directly participated and/or failed to act upon constal. violations within a policy or custom or a history of widespread abuse, under system that encourages employees, under a causual connections involvement or constitutional rights violations to be delibrately indifferent to these violations, under color of state law. See, Valdes v. Crosby, 450 F.3d. 1231, 1237 (11th Cir. 2006.) Petitioner, alleges that, each defendant was acting under color of state law in

1

depriving him of Rights secured under the Constitution or Laws of the U.S. See Saucier v. Miley, 140 F.3d 1286, 1298 (11th Cir. 2015) See) Farmer v. Brennan, 511 U.S. 825 (1994), upon 8th amendment ban on Cruel and unusual punishment, require intentional Acts taken with deliberate indifference to the Rights of Prisoners.) See) Dix on v. Hodges, 887 F.3d 1235, 1238 (11th Cir. 2018) See) Lewis V. Mullne1, 416 F. Supp. 2d 935, 945 (S.D.Cal. 2005) (A person may be liable under 1983, if he omits to perform an action he is legally Required to do, and cause's the deprivation of which the plaintiff's complains.) See, the Economic injuries in fact under 42 U.S.C. 1997(e) is, Allowing fees to be awarded for bring these violations to the courts, D.O.C. Liens & for Photo copies, And A cycle of perpetrated in Mental injury of Medical Bills, All coming pass 3,000 dollars. See) Haywood V. Drown, 129 S.Ct. 2108, of damage action against correctional officers for acts taken in the course of there employment. See) 18 U.S.C. 242, on, Pain, imprisonment, no matter how temporary. See) Spruyte V. Whiters, 753 F.2d. 149, 511, the defendants clearly are not entitled to immunity on the face of this case.

2

## CERTIFICATE OF SERVICE

I HEREBY, CERTIFY, THAT, A TRUE AND CORRECT COPY OF THIS, MOTION FOR SUMMARY JUDGMENT, WITH DECLARATION AND EXCESSIVE FORCE EVIDENCE, ATTACHED WITH A MOTION IN OPPOSITION, HAS BEEN PLACED IN THE HANDS OF INSTITUTIONAL SECURITY STAFF FOR MAILING TO: EUGENIA IZMAYLOVA, OFFICE OF THE ATTORNEY GENERAL, 501 E. KENNEDY BLVD. SUITE 1100, TAMPA, FLA. 33602, AND CANDY L. MESSERSMITH, RUMBERGER, KIRK & CALDWELL, P.A. 300 S. ORANGE AVE, SUITE 1400, ORLANDO, FLA. 32801, ON THIS 16 DAY OF NOV. 2020

/s/ Paul Knight

Paul Emmanuel Knight 063422
Suwannee Correctional Inst.
5850 E. Milton Rd.
Milton, FLA. 32583