UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

PAUL EMMANUEL KNIGHT DC#063422

       Plaintiff,

vs.                                 CASE NO.:  3:19-cv-779-J-39JBT
                                     **DISPOSITIVE MOTION**

KEEGAN M. GRAY, MATTHEW KURTH,
AUSTIN MERRITT, BRETT GILLESPIE,
JACK VANALLEN, MARTIN G. SANDERS,
JOEL ECONOM & G. ESPINO M.D.,

       Defendants.
_____/

**DEFENDANT GONZALO ESPINO, M.D.'S
DISPOSITIVE MOTION FOR SUMMARY JUDGMENT
AND MEMORANDUM OF LAW IN SUPPORT**

      Defendant, Gonzalo Espino, M.D. ("Espino"), pursuant to Federal Rule of Civil Procedure 56, moves for entry of final summary judgment in his favor against Plaintiff, and states the following in support:

I.      **Introduction**

      Plaintiff, an inmate of the Florida penal system, filed this Section 1983 claim alleging that Dr. Espino was deliberately indifferent with respect to the treatment of Plaintiff's serious medical needs. (Doc. 12).  Plaintiff claims that while at Florida State Prison, Plaintiff was beaten during a cell extraction and decontamination shower by Co-Defendants.  (Doc. 12).  The undisputed facts, demonstrate, however,

that Plaintiff has failed to establish a constitutional violation and Dr. Espino is otherwise immune from suit as a matter of law based upon the doctrine of qualified immunity.  Dr. Espino states the following in support:

## II.   Statement of Undisputed Facts

On May 1, 2019, Plaintiff was an inmate at Florida State Prison.  (Deposition of Paul Knight taken January 21, 2021 ("Knight Dep. (01/21)", at page 6, lines 3-6, filed contemporaneously herewith).   Following a cell extraction, during which Plaintiff claims he was beaten, Plaintiff presented to medical.[1]  (Doc. 12).  Plaintiff claims that when he arrived at medical he had a swollen left eye; a swollen right eye which was cut; the top of his head was bleeding; he had a broken pinky toe; and, he had swollen fingers with nerve damage to his right hand.  (Doc. 12 at page 11) (Knight Dep. (01/21) at page 11, lines 16-23; page 16, line 15 through page 17, line 8; page 19, lines 3-7).

The examination summary of the Emergency Room Record reflects that Plaintiff's left eye was swollen; Plaintiff's right eye was swollen and lacerated; and Plaintiff's nose had an abrasion.  See ESP001 attached to Declaration of Gonzalo Espino, M.D., ("Espino Declaration") filed contemporaneously herewith.   The record does not reflect injuries to the top of Plaintiff's head, his left pinky toe or his

---

[1] Plaintiff also claims he was beaten during a medical call-out on May 6, 2019.  Knight Dep. (01/21) at page 27, lines 7-23.  However, Plaintiff testified that he was not suing Dr. Espino with respect to anything that allegedly happened on May 6, 2019.  Id.

hand.  (Espino Declaration at ESP001).  The record notes that "no other injuries noted or voiced."  Id.

Plaintiff testified that during his examination he did not say anything to Dr. Espino, nor did Dr. Espino say anything to him.  (Knight Dep. (01/21) at page 33, lines 19-25).  Plaintiff also testified that did not say anything to the nurses, and does not recall what the nurses were saying to each other.  (Knight Dep. (01/21) at page 34, lines 1-13).

Dr. Espino examined the Plaintiff.  (Espino Declaration at ¶ 7) (Knight Dep. (01/21) at page 26, lines 12-19).  Dr. Espino did not observe any injuries beyond those set forth in the Emergency Room Record which were injuries to Plaintiff's left eye, right eye, and nose.  (Espino Declaration at ¶ 7).  Dr. Espino did not observe any injuries to the top of Plaintiff's head, Plaintiff's pinky toe or Plaintiff's hands. (Espino Declaration at ¶ 7).

Plaintiff acknowledges he was treated by two nurses in medical, with a third nurse taking down notes.  (Knight Dep. (01/21) at pages 25-26, lines 1-1).  Plaintiff also acknowledges that Dr. Espino examined his cut right eye.  (Knight Dep. (01/21) at page 26, lines 12-19).  The Emergency Room Record reflects that Plaintiff's right eye was cleaned and dermabond applied.  (Espino Declaration at ESP001).  Plaintiff recalled a nurse taping around the eye and putting some medication directly on the cut.  (Knight Dep. (01/21) at page 12, at lines 2-19.)  Plaintiff also recalled the nurses

3

putting a bandage on his nose.  (Knight Dep. (01/21) at page 25, lines 9-13).   In Dr. Espino's opinion, Plaintiff's left eye did not need any medical treatment and it would heal on its own.  (Espino Declaration at ¶ 8).

Plaintiff testified that other than the treatment for his left eye and nose, he did not receive any additional treatment for his alleged injuries on May 1, 2019. Plaintiff's discharge instructions were to follow up with sick-call.   (Espino Declaration at ESP001).

Plaintiff testified that his left eye healed on its own after a little over three weeks (just as Dr. Espino expected).  (Knight Dep. (01/21) at page 14, lines 4-16.) Similarly, Plaintiff's cut right eye, which was treated in medical, was completely healed in a little over three weeks.  (Knight Dep. (01/21) at page 14, lines 4-8). Plaintiff also testified that his head wound stopped bleeding after 24-hours and resolved on its own.  (Knight Dep. (01/21) at page 22, lines 7-25.)

Plaintiff's first Sick-Call Request following the May 1, 2019, incident was dated July 17, 2019, over two-and one-half months following Plaintiff's initial exam. (Espino Declaration at ESP003).  Nurses generally handle Sick-Call Requests at Florida State Prison.  (Espino Declaration ¶ 10)  Dr. Espino is not asked to address Sick Call Requests unless the severity of the complaint warrants the involvement of a medical doctor.  (Espino Declaration ¶ 10).

Plaintiff turned in his July 17, 2019, Sick-Call Request on July 18, 2019, in which he states that he was previously beaten and complains of injuries to his eyes, nose, head, hands, elbow, little toe and fingers.  (Espino Declaration at ESP003 and ESP004).  Plaintiff asserts that "[t]hey've done some nerve damage" and requests medication.  (Espino Declaration at ESP003).  He also alleges that during the incident guards were "tampering with my butt in that shower on this wing!  P.R.E.A. incident."  (Espino Declaration at ESP003).  Dr. Espino was not provided and was not asked to address Plaintiff's July 17, 2019, Sick-Call Request.  (Espino Declaration at ¶ 11 and ¶ 13).

Plaintiff was taken to medical on July 18, 2019, and examined by medical personnel.  (Espino Declaration at ESP004-ESP008).  Plaintiff reported injuries to his hands, left elbow, left pinky toe, left foot, eyes, nose and index finger.  (Espino Declaration at ESP004).  There is no mention of "nerve damage" in the Emergency Room Record.  (Espino Declaration at ESP004-ESP005).  The Emergency Room Record is marked "No" in the box following the question whether a Physician was notified.  (Espino Declaration at ESP007).

Dr. Espino did not participate in this examination and was not asked to address the injuries Plaintiff complained of during this examination.  (Espino Declaration at ¶ 13 and ¶ 14).  The record reflects that a follow-up appointment had been made. (Espino Declaration at ESP007).

Plaintiff made another Sick-Call Request on July 21, 2019, asking for pain medication for the pain in his hands, fingers and little toe. (Espino Declaration at ESP009). Dr. Espino did not see and was not asked to address Plaintiff's July 21, 2019, Sick-Call Request. (Espino Declaration at ¶ 11).

On July 22, 2019, four days after Plaintiff's July 18, 2019, examination, Dr. Espino conducted a review of the records of the examination. (Espino Declaration at ¶ 15; Espino Declaration at ESP010). Dr. Espino observed that Plaintiff had been scheduled for a follow-up examination. (Espino Declaration at ¶ 15).

On July 23, 2019, Plaintiff was examined by medical staff regarding the July 18, 2019, complaints of pain in his hands and little toe. (Espino Declaration at ESP011-ESP012). Plaintiff was prescribed 650 mg of ibuprofen. (Espino Declaration at ESP012). Dr. Espino was not involved in this examination. (Espino Declaration at ¶ 16).

On July 31, 2019, Plaintiff made another Sick-Call Request complaining of pain in his hands, his little toe, and asking for medication. (Espino Declaration at ESP013). Dr. Espino was not provided the July 31, 2019, Sick-Call Request and was not asked to address Plaintiff's complaints made in it. (Espino Declaration at ¶ 11).

On August 2, 2019, another physician ordered X-rays of Plaintiff's hands and left foot which were taken on August 5, 2019. (Espino Declaration at ESP014). Dr. Espino did not order these X-rays nor was he involved in taking the X-rays. (Espino Declaration at ¶ 17). On August 9, 2019, Plaintiff made another Sick-Call Request, stating that while he had X-rays taken, he did not receive anything for the pain. (Espino Declaration at ESP031). Dr. Espino was not provided the August 9, 2019, Sick-Call Request and was not asked to address Plaintiff's complaints made in it. (Espino Declaration at ¶ 11).

On August 13, 2019, Plaintiff made another Sick-Call Request, advising that he was still in pain and requesting medication. (Espino Declaration at ESP018). The August 13, 2019, Sick-Call Request obtained from the Florida Department of Corrections is different than the one Plaintiff attaches to his Affidavit. (Compare Espino Declaration at ESP018 with Doc. 42-13).[2] Dr. Espino was not provided either version of the August 13, 2019, Sick-Call Request and was not asked to address Plaintiff's complaints made in it. (Espino Declaration at ¶ 11).

Dr. Espino reviewed Plaintiff's radiology reports on August 12, 2019. (Espino Declaration at ¶ 18 and ESP015). On August 26, 2019, Dr. Espino examined Plaintiff. (Espino Declaration at ¶ 18 and ESP019). Based upon his

---

[2] It appears that Plaintiff wrote additional information on the Sick-Call Request after it was submitted.

review of the radiology reports, in connection with a visual observation of Plaintiff, Dr. Espino concluded that the X-rays were within normal limits and there were no fractures of the hands or feet. (Espino Declaration at ¶ 18 and ESP019). Dr. Espino noted that the little toe did not show any discoloration or any other signs consistent with a fracture. (Espino Declaration at ¶ 18 and ESP019); (Knight Dep. (01/21) at page 9, lines 13-20). Dr. Espino directed Plaintiff to tape his little toe to the next toe and provided Plaintiff tape to do so. (Espino Declaration at ¶ 18 and ESP019; Knight Dep. (01/21) at page 19, line 23 through page 20, line 9.)

Following the August 26, 2019, examination of Plaintiff, Dr. Espino was not involved in any further treatment of Plaintiff's injuries or medical issues relating to this lawsuit. (Espino Declaration at ¶ 21).

On October 10, 2019, Plaintiff transferred from Florida State Prison to Santa Rosa Annex. (Knight Dep. (01/21) at page 5, lines 19-25).

### III.   **Plaintiff Cannot Establish a Constitutional Violation**

To establish a claim under 42 U.S.C. § 1983, a plaintiff must prove: (1) a violation of a constitutional right; and, (2) that the alleged violation was committed by a person acting under the color of state law. *Holmes v. Crosby*, 418 F.3d 1256, 1258 (11th Cir. 2005).

The Eighth Amendment's prohibition of cruel and unusual punishment governs the conditions under which convicted prisoners are confined and the

treatment that they receive while in prison. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994).   The Eighth Amendment prohibits "deliberate indifference to serious medical needs of prisoners." *Estelle v. Gamble*, 429 U.S. 97, 102 (1976).  To prevail on a claim of deliberate indifference, a plaintiff must show: (1) an objectively serious medical need; (2) a defendant's deliberate indifference to that need; and (3) causation between that indifference and the plaintiff's injury.  *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1306-07 (11th Cir. 2009); *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003).  In this case, Plaintiff cannot establish any of the elements of a deliberate indifference claim.

### A.     Plaintiff Failed To Establish An Objective Serious Medical Need

To establish a prison official's deliberate indifference to a serious medical need, Plaintiff must first set forth evidence of an objectively serious medical need that "if left unattended would pose a substantial risk of serious harm."  *Farrow*, 320 F.3d at 1243; *Mann.,* 588 F.3d at 1307.  A serious medical need is considered "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention."  *Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1187 (11th Cir. 1994).  Plaintiff has not and cannot establish that Plaintiff had an objectively serious medical need when seen and examined by Dr. Espino.

As noted, Plaintiff claims that when he arrived at medical on May 1, 2019, he had a swollen left eye; his right eye was swollen and cut; the top of his head was bleeding; he had a broken left pinky toe; and, he had injuries to his hand. Plaintiff's swollen left eye healed in about three weeks without any treatment, with Plaintiff's right eye healing in about the same timeframe after dermabond was applied. These do not constitute serious medical needs. *Caldwell v. McEwing*, No. 00-1319, 2006 WL 2796637, at *11 (C.D. Ill. Sept. 28, 2006) (finding that a swollen eye and a 1/2-inch cut not requiring stitches did not constitute a serious medical need); *Vines v. Columbus House et al.*, No. 13-3923, 2017 WL 2539409, at *14 (D.N.J. June 12, 2017) (noting mere existence of a swollen eye without more is not a serious medical condition); *Blackshear v. Bailey*, No. 3:08–cv–927–J–34JRK, 2010 WL 934002, at *6, *8 (M.D. Fla. Mar. 10, 200) (finding that "facial swelling, a reddened eye, a cut inside ... mouth, abrasions on ... wrists and bodily pain and bruising" failed to show a serious medical need).

Similarly, Plaintiff's purported head wound, which also resolved on its own, does not constitute a serious medical need. *See, e.g., Youmans v. Gagnon*, 626 F.3d 557, 561 (11th Cir. 2010) (concluding that plaintiff had not established serious medical need when he had "several cuts and abrasions on his head, face, shoulder, elbow, and hand" and appeared to be bleeding slightly); *Camps v. Warner Robins*, 822 F.Supp. 724, 733 n.3 (M.D. Ga. 1993) (injury to head that was nothing more

than cut or scrape was not considered serious injury warranting constitutional protection); *Boyett v. Cnty of Washington*, 2006 WL 3422104, at *17 (D. Utah Nov. 28, 2006) (a "superficial head injury, even one requiring sutures, does not qualify as a serious medical need.").

With respect to Plaintiff's alleged claim of a broken pinky toe, Plaintiff cannot demonstrate that his toe has been diagnosed by a physician as mandating treatment. As set forth above, the only medical provider that diagnosed Plaintiff's pinky toe was Dr. Espino, who determined there was no fracture.   Further, Plaintiff has not alleged, and cannot demonstrate, that the injuries to his toe were so obvious that even a lay person would easily recognize the necessity for a doctor's attention.  *See Bemer v. Corr. Med. Servs., Inc.*, No. 10-CV-12228, 2012 WL 511599, at *3 (E.D. Mich. Feb. 16, 2012) (finding a prisoner's broken toe was not a sufficiently obvious injury within the meaning of an Eighth Amendment violation where prison staff would have needed x-rays to determine the extent of the injury); *Prescott v. Oakley*, 2016 U.S. Dist. LEXIS 187742, *7, 2016 WL 8919458, *3 n.3 (M.D. Fla. Dec. 6, 2016) (noting photos depicting pinky finger pointing downwards did not depict injuries so obvious that even a lay person would easily recognize the necessity of a doctor's attention).

Likewise, Plaintiff's claims of swollen hands do not constitute a serious medical need.  *Wesson v. Oglesby*, 910 F.2d 278, 284 (5th Cir. 1990) (holding that

an inmate's swollen and bleeding wrists from handcuffing did not constitute serious medical need); *Oliver v. Gafford*, 2018 WL 1938309 at *5, (N.D. Fla. Jan. 9, 2018) (finding slight swelling of right thumb did not constitute a serious medical need), *report and recommendation adopted*, 2018 WL 1937072 (N.D. Fla. Apr. 24, 2018).

Nor can Plaintiff demonstrate that his purported nerve damage has been diagnosed by a physician as mandating treatment, with Plaintiff testifying only that a nurse at Santa Rosa Annex told him that he would be in pain. (Knight Dep. (01/21) at page 17, lines 2-8). Nerve damage is not so obvious such that even a lay person would easily recognize the necessity for a doctor's attention. *Ellis v. Mohr*, No. 1:13 CV 1058, 2017 WL 4155769, at *10 (N.D. Ohio Sept. 19, 2017) (noting "[n]erve damage is not an injury so obvious that even a lay person would easily recognize the necessity for a doctor's attention"); *Nicholson v. Head,* 2014 WL 2465506, *4 (N.D. Ga. 2014) (granting summary judgment where plaintiff failed to present specific evidence that his alleged nerve damage had been diagnosed by a physician as mandating treatment or was so obvious that even a lay person would easily recognize the necessity for a doctor's attention).

Thus, Plaintiff has failed to provide sufficient evidence that claimed injuries constituted an objectively serious medical need. Injuries that heal on their own without any medical intervention or which require a medical professional to

diagnose where no such diagnoses have been provided, cannot constitute an objectively serious medical need under applicable case law.

### B. Plaintiff Cannot Establish Dr. Espino had knowledge of a serious medical condition and was personally deliberately indifferent.

Assuming, *arguendo*, that Plaintiff demonstrated an objective serious medical need, Plaintiff cannot prove the subjective element—that Dr. Espino was deliberately indifferent. Deliberate indifference has three elements: "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence." *McElligott v. Foley,* 182 F.3d 1248, 1255 (11th Cir. 1999). "The official must both be *aware of facts* from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan,* 511 U.S. 825, 837 (1994).

In this instance, Plaintiff maintains Dr. Espino was deliberately indifferent to his alleged serious medical needs, regardless of the fact that Dr. Espino was not aware of Plaintiff's complaints and was not involved in the examination or treatment relating to those complaints. *See e.g.* (Doc. 42-11) (Plaintiff complaining that during his August 2, 2019, visit with another doctor in which x-rays were ordered, and his August 5, 2019, call out to medical during which x-rays were taken by another medical provider "neither time was anything done by Doctor Espino, M.D"). However, when assessing the subjective component of a claim of deliberate

indifference, each individual defendant must be judged "separately and on the basis of what that person kn[ew]" and not on "[i]mputed or collective knowledge"). <u>Dang ex rel. Dang v. Sheriff, Seminole Cty. Fla.</u>, 871 F.3d 1272, 1280 (11th Cir. 2017). Here, the evidence reveals that Dr. Espino provided appropriate medical care when he was aware of Plaintiff's claimed injuries and involved in Plaintiff's treatment.

With respect to the eye injuries complained of on May 1, 2016, Dr. Espino did not believe that Plaintiff needed any further medical care for his swollen left eye or his swollen and cut right eye. Indeed, Plaintiff's own testimony confirms that both of these injuries healed in about 3 weeks, supporting Dr. Espino's course of action. Even if that were not the case, incidents of negligence, inadvertent failure to provide adequate medical care or treat a medical condition, misdiagnosis, or even medical malpractice do not amount to deliberate indifference. *Harris v. Thigpen*, 941 F.2d 1495, 1504 (11th Cir. 1991).

As to the remaining injuries allegedly present on May 1, 2019, Dr. Espino was not subjectively aware that Plaintiff claimed he suffered injuries to the top of his head, his little toe or his hands, or that Plaintiff claimed he suffered nerve damage. (Espino Declaration at ¶ 7). Plaintiff admitted he did not voice any complaints to Dr. Espino, as he did not say anything to him. <u>None</u> of Plaintiff's medical records, including Plaintiff's own Sick-Call Requests, ever assert that Plaintiff suffered an injury to the top of his head.

14

Similarly, none of the records provided to or reviewed by Dr. Espino indicated that Plaintiff claimed to be suffering from nerve damage. With respect to Plaintiff's claims of an injured toe, injured hands, and nerve damage, the first documentary evidence of these claims was the July 17, 2019, Sick-Call Request. This request, however, was not provided to or reviewed by Dr. Espino. (Espino Declaration at ¶ 11 and ¶ 12).

The Emergency Room Record of Plaintiff's July 18, 2019, examination, noted that Plaintiff claimed his toe and hands were injured, but did not mention nerve damage. While Dr. Espino reviewed these examination records on July 22, 2019, he saw that Plaintiff had been scheduled for a follow-up. Plaintiff was in fact examined in a follow-up by other medical personnel on July 23, 2019, and prescribed ibuprofen.

Dr. Espino first became involved in the treatment of Plaintiff's claimed injuries to his hands and little toe on August 12, 2019, when he reviewed Plaintiff's radiology reports. Dr. Espino then examined Plaintiff on August 26, 2019, and concluded that the x-rays were within normal limits with no fractures of the hands or feet. Dr. Espino directed Plaintiff to tape his little toe to the next toe and provided Plaintiff tape to do so.

Plaintiff cannot demonstrate that Dr. Espino acted with deliberate indifference, where in the exercise of his reasoned medical judgment, he felt such

15

treatment was sufficient.  *Linares v. Armor Health Sources*, 2009 WL 10697267, *12 (Fla. S.D. 2009) (doctor's reasoned medical decision to tape finger rather than splint it was not deliberately indifferent, even where later medical provider ordered splint); *Alspaugh v. McConnell*, 643 F.3d 162, 165 (6th Cir. 2011) (finding medical provider had not been deliberately indifferent where broken toe was taped); *Harris*, 941 F.2d at 1504.

Nothing in the record establishes that Dr. Espino had subjective knowledge that Plaintiff's alleged injuries posed a serious risk of harm based upon his examinations, diagnosis, and treatment of Plaintiff.  Further, the evidence establishes that Dr. Espino responded to Plaintiff's complaints and provided medical care to Plaintiff accordingly.  Therefore, Dr. Espino could not be deliberately indifferent to Plaintiff's medical needs.

### C.  Plaintiff cannot establish a causal connection between Dr. Espino's actions and Plaintiff's claimed injuries

"The final requirement for a deliberate indifference claim is that a defendant have a causal connection to the constitutional harm."  *Goebert v. Lee Cty.*, 510 F.3d 1312, 1327 (11th Cir. 2007) (citing *Cottone v. Jenne,* 326 F.3d 1352, 1360 (11th Cir. 2003)).  "An inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment to succeed."  *Henderson v. Cherry*, No. 5:08CV283/RS/EMT, 2010 WL 1257487, at *12 (N.D.

Fla. Mar. 16, 2010), *report and recommendation adopted,* No. 5:08CV283/RS-EMT, 2010 WL 1257489 (N.D. Fla. Mar. 26, 2010)

Here, Plaintiff can point to no medical evidence to support his claim of a causal connection between Dr. Espino's treatment (or alleged lack of treatment or delay in treatment) and any claimed resulting injuries.  Plaintiff has not submitted any medical records or expert opinions setting forth how Dr. Espino provided inadequate treatment, much less evidencing that Dr. Espino caused any harm.  While Plaintiff apparently believes he should have received different or additional treatment, he offers no medical evidence to support his claim that Dr. Espino in any way caused or contributed to his injuries.  As a result, Plaintiff cannot satisfy this element to establish a claim of deliberate indifference.

## IV.    Dr. Espino is entitled to Qualified Immunity as a matter of law.

Assuming, for purposes of this argument only, that Plaintiff established a constitutional deprivation, which the record evidence precludes, Dr. Espino is still entitled to final summary judgment because Plaintiff is unable to meet his burden to establish that Dr. Espino's conduct violated clearly established law.  As such, Dr. Espino is entitled to qualified immunity.  Qualified immunity protects "government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)

(quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  Qualified immunity is an immunity from suit rather than a mere defense to liability; and it is effectively lost if a case is erroneously permitted to go to trial.  This immunity balances the need for official accountability with the need to permit officials to engage in their discretionary duties without fear of personal liability or harassing litigation. *Pearson*, 555 U.S. at 231.  Qualified immunity "does not offer protection 'if an official knew or reasonably should have known that the action he took within his sphere of official responsibility would violate the constitutional rights of the [plaintiff].'"  *Holmes v. Kucynda*, 321 F.3d 1069, 1077 (11th Cir. 2003).

In order for government officials to enjoy qualified immunity, they must first establish that they were acting within the scope of their discretionary authority when the alleged wrongful acts occurred.  *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002).  Here, it is indisputable that during the period in which he interacted with Plaintiff, Dr. Espino was acting within the course and scope of his discretionary authority as a medical doctor, employed to provide medical care to FDOC prisoners at Florida State Prison.  (Espino Declaration).  Once it has been determined that an official was acting with the scope of his discretionary authority, the burden shifts to Plaintiff to establish that qualified immunity is inappropriate.  *Lee*, 284 F.3d at 1194.

First, the plaintiff must show that the official's alleged conduct violated a constitutionally protected right.  Second, the plaintiff must demonstrate that the right

was clearly established at the time of the misconduct. *Pearson*, 555 U.S. at 232; *Grider v. City of Auburn*, 618 F.3d 1240, 1254 (11th Cir. 2010).  A plaintiff must satisfy both prongs of the analysis to overcome a defense of qualified immunity. *Grider*, 618 F.3d at 1254.

A right is clearly established if a reasonable official would understand that his conduct violates that right.  *See Coffin v. Brandau*, 642 F.3d 999, 1013 (11th Cir. 2011) (en banc).  The touchstone of the "clearly established" inquiry is whether the official had "fair warning" and notice that his conduct violated the constitutional right in question.  *Id.* at 1013, 1015; *McClish v. Nugent*, 483 F.3d 1231, 1248 (11th Cir. 2007).  In order for the law to be clearly established, "case law must ordinarily have been earlier developed in such a concrete and factually defined context to make it obvious to all reasonable government actors, in the defendant's place, that what he is doing violates a federal law." *Priester v. City of Riviera Beach*, 208 F.3d 919 (11th Cir. 2000) (citations omitted).  The Court looks to the binding precedent set forth in the decisions of the Supreme Court, the Eleventh Circuit, or the highest court of the state (Florida, here) to decide whether a right is clearly established.  *Amnesty Int'l, USA v. Battle*, 559 F.3d 1170, 1184 (11th Cir. 2009).  "The unlawfulness of the conduct must be apparent from the pre-existing law."  *Coffin*, 642 F.3d at 1013 (citations omitted).

In this case, the case law reveals that Dr. Espino's conduct was constitutional. However, at the very least, these same cases establish that Dr. Espino plainly was not on notice that his medical treatment of Plaintiff was unconstitutional. Nor would have it been obvious to every objectively reasonable doctor confronted with the circumstances facing Dr. Espino that his conduct violated federal law. There is simply no relevant authority clearly establishing that Dr. Espino's conduct violated Plaintiff's constitutional rights. Thus, Dr. Espino is entitled to qualified immunity and final summary judgment should be entered in his favor and against Plaintiff.

## <u>CONCLUSION</u>

Plaintiff did not suffer a constitutional violation. At the very least, because it is not clearly established that Dr. Espino's conduct was unlawful, he is entitled to qualified immunity.

WHEREFORE, Dr. Espino respectfully requests this Court enter an order granting final summary judgment in his favor and against Plaintiff and for any other relief that is just and proper.

Respectfully submitted,

a

/s  Candy L. Messersmith

FRANCIS H. SHEPPARD
Florida Bar No.:  0442290
E-mail:  fsheppard@rumberger.com
CANDY L. MESSERSMITH
Florida Bar No.:  0186996
E-mail:  cmessersmith@rumberger.com
Rumberger, Kirk & Caldwell, P.A.
300 South Orange Avenue, Suite 1400
Orlando, Florida  32801
Tel:  407.872.7300
Fax:  407.841.2133
**Attorneys for Defendant Gonzalo Espino, M.D.**

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on March 8, 2021, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system.  I further certify that I mailed the foregoing document and the notice of electronic filing by first-class mail to the following non-CM/ECF participants:  Paul Emmanuel Knight #063422,

Apalachee Correctional Institution, 35 Apalachee Drive, Sneads, FL  32583 (*Pro Se* Defendant).

s/  Candy L. Messersmith

FRANCIS H. SHEPPARD
Florida Bar No.:  0442290
E-mail:  fsheppard@rumberger.com
CANDY L. MESSERSMITH
Florida Bar No.:  0186996
E-mail:  cmessersmith@rumberger.com
Rumberger, Kirk & Caldwell, P.A.
300 South Orange Avenue, Suite 1400
Orlando, Florida  32801
Tel:  407.872.7300
Fax:  407.841.2133
**Attorneys for Defendant Gonzalo Espino, M.D.**

22